***********
Upon review of the competent evidence of record and the briefs and oral arguments of the parties, with reference to the errors assigned, the Full Commission, upon reconsideration of the evidence, enters the following Order.
 ***********
Plaintiff worked for Defendant-Employer, a home services provider for senior citizens who require assistance in order to live independently, as a caregiver in the homes of its clients providing assistance with housework and activities of daily living. On May 29, 2008, Plaintiff was working for Defendant-Employer as a caregiver for a client who left his home without Plaintiff's knowledge. Upon discovery that the client was missing, Plaintiff went to look for him, fell down the garage steps of his home, and injured her left shoulder and back. Later that same day, Plaintiff presented to Dr. Samuel David Ciliberto, an orthopaedist, who diagnosed her *Page 2 
with a greater tuberosity left humerus fracture, lumbo-sacral strain, and cervical sprain with underlying intervertebral disc degeneration at the C5-C6 level of the spine. In addition, Dr. Ciliberto wrote Plaintiff out of work.
On June 27, 2008, Defendants admitted the compensability of Plaintiff's May 29, 2008 work injury via a Form 60. Defendants indicated on the Form 60 that Plaintiff "fell down stairs and fractured her left arm/shoulder." The parties stipulated in the Pre-Trial Agreement that the "nature of the injury is a spine and left shoulder injury." Defendants paid Plaintiff temporary total disability and medical compensation.
Plaintiff continued to seek treatment from Dr. Ciliberto through August 2008. On September 2, 2008, Dr. Ciliberto released Plaintiff to return to work with restrictions of no lifting over 20 pounds with her left arm. However, Dr. Ciliberto did not assign any restrictions to Plaintiff's right arm.
Dr. Ciliberto ordered magnetic resonance imaging (MRI) of Plaintiff's cervical spine and left shoulder. The cervical spine MRI revealed mild degenerative changes with posterior bulging at the C5-C6 and C6-C7 levels of the spine. The left shoulder MRI revealed edema in the shoulder bone secondary to fracture. Dr. Ciliberto discussed the possibility of performing an acromioplasty to help alleviate Plaintiff's left shoulder pain, but did not recommend surgery for the cervical spine complaints. Dr. Ciliberto continued Plaintiff's work restrictions.
On November 17, 2008, Dr. Ciliberto again discussed with Plaintiff the possibility of acromioplasty of the left shoulder to relieve pressure on the shoulder joint capsule if she could no longer tolerate her pain symptoms. Dr. Ciliberto opined that Plaintiff could do light/sedentary work, but that she was unable to perform her usual duties that required lifting, transferring, or handling patients. Accordingly, Dr. Ciliberto issued Plaintiff permanent light/sedentary work *Page 3 
restrictions, and assigned a 10 percent permanent partial disability rating to her left arm and a five percent permanent partial disability rating to her back.
Defendants contacted Plaintiff about an eventual return to work beginning on December 15, 2008. However, Plaintiff did not return to work. On February 17, 2009, Defendants filed a Form 24 seeking to terminate Plaintiff's workers' compensation benefits, contending that she refused suitable employment offered by Defendant-Employer. On March 31, 2009, Special Deputy Commissioner Emily M. Baucom filed an Order denying Defendants' Form 24, citing that Defendants failed to provide either Plaintiff or Dr. Ciliberto with a specific employment description for the position proffered.
On April 23, 2009, Plaintiff presented to Dr. Scott Steven Sanitate, a pain management specialist, for a second opinion regarding her left shoulder at the request of Defendants. Dr. Sanitate diagnosed Plaintiff with mechanical lower back pain, left shoulder and cervical pain, and left impingement syndrome, and opined that she could return to work with no patient lifting. On May 11, 2009, Dr. Sanitate assigned Plaintiff work restrictions of no patient lifting and no lifting over 30 pounds.
On June 17, 2009, Dr. Sanitate altered Plaintiff's work restrictions to no patient lifting, no heavy lifting more than 20 pounds, and no left upper extremity activity above the horizontal position. Thereafter, Defendants provided Dr. Sanitate with a light-duty employment description which included light physical demands of exerting 10 to 20 pounds occasionally and required pushing, pulling, and lifting up to 25 pounds. Dr. Sanitate approved this light-duty employment description on July 13, 2009. However, Defendants did not provide this employment description to Dr. Ciliberto, who was Plaintiff's authorized treating physician at that time. Plaintiff did not accept this position proffered by Defendants. *Page 4 
On August 28, 2009, former Special Deputy Commissioner Christopher B. Rawls filed an Order again denying another Form 24 filed by Defendants seeking to terminate Plaintiff's workers' compensation benefits for failure to accept suitable employment. Former Special Deputy Commissioner Rawls based his denial of Defendants' Form 24 on the confusion between Defendant-Employer's long-used, general "caregiver" employment description and the one provided to Dr. Sanitate, which Defendant-Employer altered to meet Dr. Sanitate's work restrictions. The August 28, 2009 Order also cited Defendant-Employer's failure to provide Plaintiff with a list of the specific clients that she would be assisting, and to provide Dr. Ciliberto with the employment descriptions.
Following the hearing before the Deputy Commissioner, Dr. Ciliberto reviewed the employment description containing the 25 pound lifting requirement and changed the lifting requirement to 20 pounds. Dr. Ciliberto indicated that Plaintiff could perform all of the tasks listed without going beyond her restrictions. Dr. Ciliberto further noted that the 20 pound restriction is for Plaintiff's left arm, and that nothing is keeping her from lifting a greater amount of weight with her right arm.
Also following the hearing before the Deputy Commissioner, Plaintiff presented to Dr. Sameer Mathur, an orthopaedist to whom Dr. Sanitate referred her for her lower back complaints. Dr. Mathur recommended a lumbar discogram after two epidural steroid injections failed to provide Plaintiff with relief. Following the closing of the record before the Deputy Commissioner, Defendants authorized the lumbar discogram recommended by Dr. Mathur.
On April 21, 2010, Plaintiff returned to Dr. Mathur, who noted that she continued to have significant pain in her lower back radiating into her anterior thighs bilaterally, difficulty with performing her activities of daily living, and that conservative treatment failed to relieve her *Page 5 
lower back complaints. Dr. Mathur interpreted the lumbar discogram as revealing concordant pain at the L4-L5 and L5-S1 levels of the spine, and opined that Plaintiff's lower back pain was an exacerbation of a pre-existing condition involving the degeneration of the L4-L5 and L5-S1 levels. Because several conservative treatment measures failed, Dr. Mathur recommended that Plaintiff undergo a lumbar fusion surgery at the L4-L5 and L5-S1 levels of the spine. However, Defendants refused to authorize the lumbar fusion surgery recommended by Dr. Mathur, Plaintiff's authorized treating physician.
On June 4, 2010, the Deputy Commissioner filed an Opinion and Award suspending Plaintiff's workers' compensation benefits, based upon the conclusion that Plaintiff refused employment suitable to her capacity. The results of the lumbar discogram recommended by Dr. Mathur and his subsequent treatment and opinions, including the recommendation of a lumbar fusion surgery, were not part of the record before the Deputy Commissioner. Plaintiff contends that this additional evidence concerning the lumbar discogram ordered by Dr. Mathur and his subsequent treatment and recommendations should be made part of the record so that the issue of additional medical treatment raised by this new evidence may be addressed.
On July 29, 2010, Plaintiff filed a Form 33 to request a hearing regarding her entitlement to additional medical treatment, presumably to get authorization for the medical treatment recommended by Dr. Mathur. On November 1, 2010, Plaintiff filed a Motion for Submission of Additional Medical Evidence to the Record to be Considered by the Full Commission, seeking to admit into evidence the medical records of Dr. Mathur, including the results of the lumbar discogram he ordered. The Full Commission held Plaintiff's Motion in abeyance pending the November 17, 2010 Full Commission hearing. *Page 6 
The Full Commission is of the opinion that the record in this matter should be re-opened to receive additional evidence, including deposition and/or other witness testimony, if deemed necessary, which was unavailable at the time of the closing of the record before the Deputy Commissioner.
For good cause shown, it is hereby ORDERED that this case be remanded to Chief Deputy Commissioner Wanda Blanche Taylor for a full evidentiary hearing in order to receive additional evidence, including deposition and/or other witness testimony, if deemed necessary, which was unavailable at the time of the closing of the record before the Deputy Commissioner.
The Deputy Commissioner shall gather the evidence, order a transcript of the proceedings, and forward such transcript to the Full Commission for review and decision. Upon receipt of the transcript of the remanded proceedings, the Full Commission shall enter an Order setting forth a schedule for briefing and for further oral arguments, if necessary. All correspondence from the parties to the Full Commission concerning this matter shall be directed to Bernadine S. Ballance, Commissioner.
It is further ORDERED that the issues in this matter currently on appeal before the Full Commission shall be consolidated with the issues raised in the Form 33 filed by Plaintiff on July 29, 2010. No costs are assessed at this time.
This the __ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1